**In re Ray Charles WILLIAMS, Debtor.**

**Bankruptcy No. 93–42370–A.**

United States Bankruptcy Court,
E.D. Virginia,
Newport News Division.

April 22, 1994.

---

Frank J. Santoro, Portsmouth, VA, as standing Chapter 13 Trustee.

Richard G. Poinsett, Hampton, VA, for debtor.

## MEMORANDUM OPINION

DAVID H. ADAMS, Bankruptcy Judge.

The standing trustee's Objection to Confirmation of the Modified Plan, made on two grounds, was heard by this Court on Friday, April 8, 1994. For the reasons stated herein, the Court finds in favor of the debtor and overrules the trustee's objection on both grounds.

### Findings of Fact

The debtor filed a petition on November 23, 1993, for relief under Chapter 13 of the Bankruptcy Code. On December 8, 1993, the debtor filed a Chapter 13 plan, and on February 24, 1994, an order confirming the plan was docketed. Prior to the entry of the order confirming that first plan, however, the debtor filed a modified plan on February 3, 1994. It is to the modified plan that the Chapter 13 trustee objects and, pursuant to 11 U.S.C. § 1323(b), it is that plan that this Court now considers.

The first ground of the trustee's objection involves paragraph B–11 of the plan which provides that a judgment lien in favor of NationsBank is disallowed and shall be deemed avoided. The debtor states in the plan that the judgment lien attaches to the debtor's residence at 701 LaSalle Avenue in Hampton, Virginia, and that the value of the property is not sufficient to satisfy any portion of the lien, which stands in a third position behind a first deed of trust and a prior judgment lien.

The debtor's plan states that the outstanding balance is $16,000 on the first deed of trust note and the balance of $57,350 remains on the prior judgment lien. Debtor notes on Schedule C that the property in question, in which the debtor holds a one-half interest, has a fair market value of $70,000. Pursuant to 11 U.S.C. § 522(b)(2)(B), debtor claims an exemption of $10.00 in his interest in the residence. Alleging that the equity in the collateral is insufficient to satisfy the NationsBank third position judgment lien, the debtor asks this Court, through confirmation of the plan, to declare the judgment lien in favor of NationsBank avoided, and to allow the debtor to make payments only to the first deed of trust holder and prior judgment lienholder. NationsBank is not a complaining party and did not object to confirmation of the debtor's Chapter 13 plan even though the plan mandates the release of the NationsBank judgment lien.

The trustee argues that the recent U.S. Supreme Court case of *Nobelman v. American Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106,

124 L.Ed.2d 228 (1993), has invalidated the practice of "stripping down" any lien secured by real estate that is the debtor's principal residence. The trustee further argues that if "stripping down" is permitted, it must be initiated by a contested matter and cannot be accomplished simply through the provisions of a confirmed Chapter 13 plan.

The debtor contends that the Supreme Court's holding in *Nobelman* is limited to claims secured by a mortgage on the debtor's principal residence with some value in the collateral to support the secured claims and, therefore, does not apply to a judgment lien which is not supported by any value in the collateral to which it attaches. Counsel for the debtor also argues that the plan is an appropriate vehicle for lien avoidance, citing as support Bankruptcy Code § 1327(c), which states that, upon confirmation of the plan, "... property vesting in the debtor ... is free and clear of any claim or interest of any creditor provided for by the plan."

### Conclusions of Law

A. §§ 506, 1322, and *Nobelman*

■ In this case, as with all cases involving bifurcation of claims by the debtor, it is first necessary to determine the value of the collateral. A preliminary § 506(a) analysis must be made to determine the status of the secured claim in question. *Sette v. Bello,* 164 B.R. 453 (Bankr.E.D.N.Y.1994). There is no evidence before the Court that the residence of the debtor, in which he has a one-half interest, has any value as collateral for the NationsBank judgment lien. The trustee contested neither the debtor's scheduled value of $70,000 for the residence nor the debtor's stated amounts owed to the two prior lienholders totalling $73,350. Thus, there is no dispute that the NationsBank judgment lien retains no value in the residence and would receive nothing following a liquidation of the property. Being totally unsecured by the debtor's principal residence as defined by § 506(a) of the Code, a determination of the availability of lien modification by the debtor must be viewed in light of the *Nobelman* decision.

Bifurcation, or "stripping down", is provided for in Bankruptcy Code § 506(a), which states that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." Debtors have historically cited § 506 of the Code in support of bifurcation of creditors' claims which are secured by a deed of trust on real property.

In conflict with § 506(a) of the Bankruptcy Code is § 1322(b)(2), which states that a debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." Prior to *Nobelman,* many courts permitted bifurcation of claims secured by interests in real property that was the debtors' principal residence, but there was a split among the circuits that the Supreme Court resolved.

Several earlier decisions of this Court and those of the Ninth and Third Circuits allowing bifurcation were overruled by the Supreme Court's ruling in *Nobelman.* The debtors in *Nobelman* proposed in their Chapter 13 plan that the mortgage on their principal residence in Texas be reduced from $71,335 to the property's fair market value of $23,500. The remainder of the obligation was to become an essentially worthless unsecured claim. The Supreme Court focused on the protection in § 1322(b)(2) of the lender's "rights", stating that such rights are reflected in the relevant mortgage instruments, which are enforceable under state law. The Court went on to say that the more reasonable interpretation of Bankruptcy Code § 1322(b)(2) is "to read 'a claim secured only by a [homestead lien]' as referring to the lienholder's entire claim, including both its secured and unsecured components, since it would be impossible to reduce [debtors'] outstanding mortgage principal to $23,500 without modifying the mortgagee's contractual rights as to interest rates, monthly payment amounts, or repayment term." *Nobelman,* — U.S. at ——, 113 S.Ct. at 2108. In essence, these were all of the rights that

were bargained for by the mortgagor and mortgagee.

In determining the applicability of the *Nobelman* decision, this Court has determined that the NationsBank lien is totally unsecured and differs materially in character from the mortgage lien involved in *Nobelman*. In that case, the lender held a claim secured only by a security interest in the debtor's principal residence. The claim at issue in the instant case, however, is a judgment lien against the debtor's principal residence. Section 101(36) of the Bankruptcy Code defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding," as opposed to Section 101(51) which defines a "security interest" as a "lien created by an agreement." The first is a result of judicial proceedings and is nonconsensual, and the latter is the result of an agreement between the parties. *Nobelman* and its progeny all relate to the protection of consensual mortgage security interests, not liens resulting from judicial proceedings.

NationsBank's lien was obtained through judicial process rather than by agreement with the debtor; in addition, its claim is wholly unsecured. As such, the NationsBank claim does not contain all of the rights of a consensual lien and falls outside the protection of Bankruptcy Code § 1322(b)(2) and is not governed by the Supreme Court's holding in *Nobelman*. A judgment lienholder has none of the elements of the "security interest" contemplated by § 1322(b)(2). The debtor, therefore, is permitted to classify NationsBank's claim as fully unsecured, pursuant to § 506(a), and modify the rights of the lienholder under § 1322(b)(2). The judgment lien may be modified as the debtor proposes in his Chapter 13 plan. See *Hirsch v. Citicorp Mortgage Corp.*, 155 B.R. 688 (Bankr.E.D.Pa.1993).

For a thorough and well-reasoned post-*Nobelman* analysis particularly instructive on the facts and the applicable law to the case at bar, see *In re Hornes*, 160 B.R. 709 (Bankr. D.Conn.1993).

**B. Modification procedure**

■ The next question for the Court is whether the debtor may avoid NationsBank's unsecured lien claim through the provisions of the Chapter 13 plan, or whether the debtor must institute a contested matter under Bankruptcy Rule 4003(d). Rule 4003(d) provides that "[a] proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014." The trustee argues that the debtor, through his plan, is attempting to improperly avoid the fixing of a lien under § 522(f), when such an avoidance action requires the filing of a contested matter.

Section 522(f)(1) states that avoidance of the fixing of a judicial lien by the debtor is only "to the extent that such lien impairs an exemption to which the debtor would have been entitled...." The value of the lien that exceeds the amount of the exemption, however, may still be enforced by the creditor, except in this instance the lien may not be enforced by NationsBank for the reasons stated in Part A of this opinion. The debtor has claimed an exemption of $10.00 in his principal residence. Were the debtor to initiate a proceeding pursuant to § 522(f) under Rule 4003(d) and Rule 9014, the debtor would be able only to seek avoidance of NationsBank's lien to the extent the lien impaired the $10.00 exemption. Such a procedure is not necessary in this case because of the avoidance of the NationsBank lien in the plan under § 1322(b)(2), thereby making protection of the debtor's exemption not the primary issue. Based on the facts in this case, the exemption issue raised by the trustee is subsumed in and disposed of by the plan modification of the judicial lien.

A situation similar to the one at hand was present in *In re Gadson*, 114 B.R. 453 (Bankr.E.D.Va.1990). The debtors' Chapter 13 plan treated as unsecured the claim of the holder of a junior deed of trust against the debtors' residence. The lender had filed a timely proof of claim based upon the note securing the junior deed of trust. Upon review of the debtors' Chapter 13 plan, the lender raised an objection to confirmation of the plan based on the treatment of its claim

as unsecured. At the hearing conducted on the motion of the trustee to determine the status of the lender's claim, the lender argued that confirmation of the debtors' plan should have no effect on its claim, as the debtors had failed to object at any time to the lender's proof of claim. The debtors relied solely on the provisions of their plan to modify the rights of the creditor's claim and treat it as wholly unsecured. The Court in *Gadson* allowed the debtors' Chapter 13 plan to modify the claim of the lender, and stated that the lender had an adequate opportunity to object to the plan's treatment of its claim.

Although the Fifth Circuit in *In re Simmons*, 765 F.2d 547 (5th Cir.1985), held that under § 1327(a) a confirmed Chapter 13 plan has no *res judicata* effect on a secured claim, the facts of that case are distinguishable from the case at bar. In *Simmons*, the creditor filed a proof of claim indicating a secured claim based on a statutory construction lien. The property to which the construction lien attached was ultimately sold and the proceeds remained in escrow. No objection to the proof of claim was ever raised by the debtor. On the proof of claim form, the lien creditor indicated that he accepted the debtor's Chapter 13 plan but that he objected to his claim being scheduled as unsecured. Judge Tice of this Court in *In re Gadson, supra,* also distinguished the holding in *In re Simmons, supra,* on procedural grounds.

This case differs from *Simmons* in several respects. First, no proof of claim has been filed by NationsBank. In *Simmons* it was recognized that the lienholder's claim was properly classified as "secured", while in this case the bank's claim is fully unsecured and the debtor's plan classifies the entire NationsBank claim as unsecured. Finally, no objection to the debtor's Chapter 13 plan has been filed by NationsBank.

Bankruptcy Code § 1322(a)(3) permits a debtor to classify creditors' claims and § 1322(b)(2) allows the debtor to modify the rights of holders of secured claims. It has developed as a common practice for Chapter 13 debtors to modify and "strip down" the lien rights of secured creditors in their plans. This occurs frequently in connection with undersecured claims against automobiles that debtors wish to retain by paying the secured portion of the debt in full with interest, often with little or nothing provided for the unsecured portion of the debt. This practice is not only practical, but is necessary for the effective administration of the vast number of Chapter 13 cases filed each year. The expense of requiring the filing of contested matters by Chapter 13 debtors, as urged by the trustee, in order to permissibly modify secured creditors' rights, would be unnecessarily burdensome to the debtors and to the bankruptcy courts' dockets.

■ There is no reason that the same rationale should not apply to secured creditors whose liens are not protected by the exception under § 1322(b)(2). A potentially secured creditor whose claim is classified otherwise by the debtor in a Chapter 13 plan, has ample means to contest the plan's treatment of the claim. A creditor can file a proof of claim to put the plan's treatment of that claim in issue, or the offended creditor can object to confirmation of the plan and challenge the treatment of its claim at the confirmation hearing. The burden of policing a plan's treatment of claims should be on the Chapter 13 creditors as it is on the Chapter 11 creditors under § 1111(a).

The language in the debtor's plan that the trustee finds objectionable is: "The judgment lien in favor of NationsBank on the Debtor's residence is not supported by the real estate's value. Because of this, the lien of NationsBank is disallowed since the real estate is worth $70,000.00 with prior liens totalling $73,000.00. The underlying debt was discharged in a prior bankruptcy. The order confirming the plan shall be deemed to avoid the lien and shall be a judicial determination of the property's value. In order to conform the land records, NationsBank shall release the lien now recorded in the Clerk's Office of the Circuit Court of the City of Hampton." There is no dispute as to the nature or amount of NationsBank's claim, and the plan properly classifies and permissibly modifies the claim.

The court in *In re Lee*, 156 B.R. 628 (Bankr.D.Minn.1993), recognized the same issue faced by this Court, i.e., whether the plan

can be the vehicle for the avoidance of a lien, in lieu of an adversary proceeding or contested matter required by the Bankruptcy Rules. Without discussing the precise issue, the *Lee* court determined that the provision in the debtor's plan vesting the property of the debtor, upon payment of the secured portion of the claim, in the debtor free and clear of the creditor's lien is permissible under § 1327(b) and (c).

The Legislative Histories of §§ 1322(b) and 1327 provide no insight into the philosophy of the provisions beyond the words themselves. Support for the conclusion reached by this Court is found in the analysis of Bankruptcy Code § 1327 in a leading treatise on the subject:

> ... One of the principal purposes of chapter 13 was to provide individual debtors with effective ways of dealing with secured creditors, and a secured creditor may be provided for in a plan even if it does not file a claim. Therefore, a secured creditor ignores a chapter 13 case at its peril. Because all parties are entitled to rely on the *res judicata* effect of a chapter 13 confirmation order, a confirmed chapter 13 plan is binding on all creditors. 5 Collier on Bankruptcy ¶ 1327.01[3], at 1327–9 (15th ed. 1994).

■ This Court is of the opinion that the debtor in this case is entitled to provide in his Chapter 13 plan for the avoidance of NationsBank's judicial lien pursuant to Bankruptcy Code §§ 1322(b)(2) and 1327(b) and (c). The debtor's plan provides for the vesting of the debtor's interest in his real estate free and clear of the NationsBank lien upon confirmation of the plan. Such treatment of a creditor's claim is contemplated by the Code, as noted previously. Parties in interest have sufficient opportunity to object to the treatment of claims in the debtor's Chapter 13 plan, simply by objecting to confirmation pursuant to Bankruptcy Code § 1324. The debtor's treatment of the NationsBank judgment lien claim is totally independent of any claim to an exemption relative to his real property and the avoidance of a judicial lien impairing that exemption under § 522(f). The debtor in this case would accomplish little by instituting a contested matter under

Rule 4003(d). A contested proceeding would serve only to duplicate the treatment of the NationsBank lien permissibly set out in the plan. Further, NationsBank's lien should not have any bearing on this case with respect to the claimed exemption, as the value of the debtor's interest in his principal residence is such that avoidance of the NationsBank judicial lien is unnecessary.

Counsel for the debtor is directed to present an order in accordance with this decision.